## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

KYLE KNOBLAUCH, JEFF KUCHARSKI, and
GEORGE SCHLEY on behalf of themselves
Individually and all other similarly situated employees,

      Plaintiffs,

v.                                  Case No. 24 CV 315

DICK'S SPORTING GOODS, INC.,

      Defendant.

## CLASS ACTION COMPLAINT

NOW COME the Plaintiffs, Kyle Knoblauch, Jeff Kucharski, and George Schley ("Named Plaintiffs"), individually and on behalf of all other similarly situated employees of Dick's Sporting Goods, Inc., by and through their attorneys, McDonald & Kloth, LLC, and as and for their Class Action Complaint against the Defendant, Dick's Sporting Goods, Inc., state as follows:

### INTRODUCTION

1.      The Named Plaintiffs bring this action in their individual capacities and on behalf of a nationwide class of similarly situated commissioned salespersons employed by Dick's Sporting Goods within the golf department of its Pro+ stores who have been deprived of commissions earned under the company's commission plans.

2.      In the first quarter of 2021, Dick's implemented a commission program for all individuals employed as salespersons within the golf department of its Pro+ stores. The

1

commission program provided an opportunity for all golf department salespersons to earn 3% of each qualifying sale. Commission payments were to be made three (3) weeks in arrears.

3.    In late 2023, the Named Plaintiffs learned that Dick's Sporting Goods had not paid commissions on sales that qualified for a commission payment under the terms of the commission program. Dick's Sporting Goods informed the Named Plaintiffs that the company had not properly implemented the commission program and, therefore, had failed to pay its commissioned salespersons the commissions they had rightfully earned under the commission program. Dick's Sporting Goods informed the Named Plaintiffs that commission payments were due and owing to the Pro+ golf department salespersons under the commission program.

4.    The Named Plaintiffs requested that Dick's Sporting Goods provide payment for commissions rightfully earned under the commission program but, to date, Dick's Sporting Goods has refused to pay all commissions earned.

5.    The Named Plaintiffs spoke with other Pro+ store employees and learned that they, too, had not received commission payments.

6.    Defendant's commission program continues in full effect as of the present date.

**PARTIES**

7.    Plaintiff Kyle Knoblauch ("Knoblauch") is an adult resident of the State of Wisconsin who resides at 7146 Tamarack Ct., Mequon, Wisconsin 53092.

8.    Plaintiff Jeff Kucharski ("Kucharski") is an adult resident of the State of Wisconsin with a residence located at W55N726 Cedar Ridge Drive, Cedarburg, Wisconsin 53012.

2

9.      Plaintiff George Schley ("Schley") is an adult resident of the State of Wisconsin with a residence located at W206N16733 Blackberry Court, Unit 1527, Jackson, Wisconsin 53037.

10.     Dick's Sporting Goods, Inc. ("Dick's" or the "Company") is a corporation organized under the laws of the State of Delaware and maintains a principal place of business located at 345 Court Street, Coraopolis, Pennsylvania, 15108. Dick's has a registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

11.     The Named Plaintiffs bring class action claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment as well as a claim for violations of state wage payment statutes.

12.     This Court has original federal question jurisdiction over this prospective class action pursuant to 28 U.S.C. § 1332(d), as the sum in controversy exceeds $5,000,000 exclusive of interests and costs, and nearly all of the prospective Class Members are citizens of a state other than Wisconsin.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this district, and Dick's has substantial and systematic contacts in this district.

## STATEMENT OF FACTS

### *General Allegations*

14.     Based in Coraopolis, Pennsylvania, Dick's is the largest sporting goods retailer in the United States with over 797 stores and 50,000 employees across 48 states.

15.     While every Dick's store sells golf equipment, Dick's maintains a subset of stores, referred to as "Pro+" stores, that contain a stand-alone golf department. The Pro+ stores carry a larger selection of golf equipment, and their golf sales associates are specially trained and qualified to sell golf equipment.

16.     On information and belief, Dick's maintained 136 Pro+ stores in 36 states in 2023. As of February 2024, Dick's maintains 154 Pro+ stores in 47 states (the three states without a Pro+ store include Montana, Alaska, and Hawaii).

17.     Dick's provides its Pro+ golf department salespersons with an opportunity to earn commissions for selling specified golf products. Dick's implemented the commission program in the first quarter of fiscal year 2021.

18.     Dick's refers to its commission program the "Premium Equipment Commission Program" ("PECP").

19.     The 2021 PECP included the following pertinent representations:

**OVERVIEW**

"[Dick's] & [Golf Galaxy] in partnership with multiple key vendors is initiating a commission sales opportunity for all [Golf Galaxy] & [Dick's Pro+] stores beginning in Q1 FY2021 on the sales of selected premium golf equipment. The goal of this program is to grow our overall golf equipment business by incentivizing our teammates to show golfers the benefits to their game of the newest technology available."

**PROGRAM CRITERIA**

- Participating vendors include:
    - Titleist
    - Callaway
    - TaylorMade
    - Cobra
    - Ping
    - Tommy Armour
    - Scotty Cameron will be commissioned a 2%

4

- All teammates in a non-bonus eligible position can participate.

- Commission rate is 3% on eligible in-stock and custom order sales. Sales made on the in-store kiosk or AOS system are not eligible.
  - In-stock sales will be tabulated based on the date they were sold and captured in POS.
  - Custom sales will be tabulated based on the Customer Received date within the COS Application.

- Sales of the eligible styles attached are the only sales that count toward commission payouts.
  - Updates to the Commission Style List will be made periodically when new products launch or current products cascade down in price.
  - A current Commission Style List will be maintained in DSGN > Golf > Reference > Eligible Commission Styles

- Commission is incremental to your current base rate of pay.

- Teammates do not receive commission on clubs that get returned.

**PAYOUT SCHEDULE**

- Commission will be paid bi-weekly along with regular pay.

- Commission pay will always be 3 weeks in arrears to allow for all the required reporting and review.
  - For example, pay period starts on 4/30 & ends on 5/13. Commission for eligible sales captured in that time period will be paid on 6/2.
- Teammates must be employed by Dick's Sporting Goods at the time commission is paid out.

A true and accurate copy of the 2021 PECP is attached hereto as Exhibit A.

20.    The 2021 PECP included an instruction to Dick's managerial personnel stating,

"It is important to train teammates running transactions at POS on the appropriate process."

Exhibit A.

21.    The 2021 PECP included a directive to the "Department Manager/MOD" stating,

"Cover details at Morning Huddle meetings to ensure that all Teammates are aware of this

program." Exhibit A.

22.     The 2021 PECP was updated in or around July 2023. A true and accurate copy of the updated PECP is attached hereto as Exhibit B.

23.     With few exceptions, the 2023 PECP followed the 2021 PECP program criteria and processes. Exhibit B.

24.     One notable difference in the 2023 PECP criteria was that it applied to "All teammates in a non-bonus eligible position that custom fit or directly assist in the selection and sale of commission product can participate." Exhibit B.

25.     Another notable difference in the 2023 PECP criteria is that it specifically excluded teammates in California. Exhibit B.

26.     Like the 2021 PECP, the 2023 PECP included an instruction stating, "It is important to train teammates ringing transactions at POS on the appropriate process." Exhibit B.

27.     Knoblauch is employed with Dick's at a Pro+ store in Grafton, Wisconsin as a Golf Sales Lead and has been employed in that capacity since September 5, 2022.

28.     Kucharski is employed with Dick's at a Pro+ store in Grafton, Wisconsin as a Golf Sales Associate and has been employed in that capacity since September 24, 2021.

29.     Schley is employed with Dick's at a Pro+ store in Grafton, Wisconsin as a Golf Sales Associate and has been employed in that capacity since March 16, 2023.

30.     Dick's did not notify the Named Plaintiffs of the PECP upon becoming employed with the Company.

31.     On information and belief, Dick's did not notify similarly situated employees (i.e. all golf sales associates employed by a Dick's Pro+ store who sold golf equipment that qualified for the payment of commission in accordance with the PECP effective at the time of sale) ("Similarly Situated Employees") of the PECP upon becoming employed with the Company.

32.     Dick's did not affirmatively notify the Named Plaintiffs of the PECP at any time during their employment.

33.     On information and belief, Dick's did not notify Similarly Situated Employees of the PECP at any time during their employment.

34.     In or about March 2023, Dick's changed its payroll system from using Workforce human capital management software to Workday human capital management software.

35.     The change to Workday software resulted in Dick's employees receiving an earning statement that appeared slightly different from the earning statement generated by the Workforce software.

36.     The Workday earnings statement included a line-item under "Earnings" for "Commission," whereas the Workforce earnings statement did not include the same or similar line-item. *Compare* Exhibit C (Workday earning statement) with Exhibit D (Workforce earning statement).

37.     Knoblauch reviewed his earnings statements in the summer of 2023 and noticed that he had received payments for commissions.

38.     On October 21, 2023, Knoblauch inquired about the commission payments with the store manager, Josh Widner ("Widner") at the Grafton, Wisconsin location. Widner indicated that he was not aware of any commission structure for golf sales associates at Dick's and did not know why Knoblauch's earnings statement showed a payment for commissions.

39.     On October 27, 2023, Widner explained to Knoblauch that he had investigated the issue and learned that golf salespersons at Dick's Pro+ stores, which included the Grafton, WI store, had been and were eligible to earn a commission on selling certain golf equipment. Widner further stated that neither he nor the district manager, Scott Frazier ("Frazier"), had been made

7

aware of the commission program. Widner provided Knoblauch with a copy of the 2023 PECP at that time.

40. Widner informed Knoblauch that he had reviewed sales data for the Dick's Pro+ store in Grafton, WI and learned that approximately $400,000 in sales would have qualified for the commission in year 2023.

41. On information and belief, golf salespersons at Dick's Pro+ stores across the United States sold products in the golf department since January 1, 2021 that qualified for commission payments under the PECP but were not paid to golf department salespersons as required by the PECP.

42. Widner and Frazier met with Knoblauch on December 15, 2023 and informed Knoblauch that while he and the other golf salespersons were entitled to commissions under the PECP, Dick's would not pay any commissions to the salespersons.

43. Knoblauch has communicated with various Dick's corporate personnel since that time and has been informed that Dick's continues to investigate the issue.

44. Dick's corporate personnel have confirmed to Knoblauch that commissions under the PECP are due and owing to all Pro+ salespersons who sold qualifying golf equipment.

45. The Named Plaintiffs and Similarly Situated Employees have not received all compensation for commissions earned under the 2021 PECP or 2023 PECP.

*Class Allegations*

46. The Named Plaintiffs bring all counts as a class action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. The Nationwide Class that the Named Plaintiffs seek to represent is composed of and defined as follows:

8

"All individuals currently or formerly employed by Defendant Dick's Sporting Goods in a Pro+ store as commissioned salespersons who were employed on or after January 1, 2021."

47.     The Named Plaintiffs also bring state statutory claims under Wisconsin law on behalf of themselves individually and others similarly situated.

48.     *Numerosity.* Dick's currently employs several hundred commissioned salespersons across 154 Pro+ stores in 47 states. Each Pro+ store employs multiple commissioned salespersons in the golf department. In the Grafton, Wisconsin store, for example, Dick's employs six (6) commissioned salespersons on average. Class members, therefore, are far too numerous to be individually joined in this lawsuit.

49.     ***Existence and Predominance of Common Questions.*** Common questions of law and/or fact exist as to the members of the Class, and commons questions of law and/or fact predominate over any questions affecting only individual members of the Class. The common questions include the following:

a.      Whether members of the Nationwide Class had contractual relationships with Defendant such that Class Members were required to perform their duties and responsibilities as golf department salespersons for Defendant in exchange for a compensation plan that provided for commissions to be paid to the salespersons for sales that Defendant credited to them in accordance with the commission program;

b.      Whether Defendant agreed to pay the Class Members for products sold in accordance with the terms of the commission programs that were in effect between January 1, 2021 and the present date;

c.      Whether Defendant breached its agreements with the Class Members by failing and/or refusing to pay commissions earned in accordance with the terms of the commission program in effect at the time of sale;

d.      Whether Defendant breached the covenant of good faith and fair dealing by failing and/or refusing to pay commissions earned in accordance with the terms of the commission program in effect at the time of sale;

e.      Whether Defendant breached the covenant of good faith and fair dealing by refusing to notify Pro+ stores of the existence of the commission plans;

9

f.      Whether Defendant breached the covenant of good faith and fair dealing by refusing to pay commissions to the Class Members after being notified of its failure to pay commissions in accordance with the terms of the commission plans;

g.      Whether Defendant's decision to retain for itself commissions earned by Class Members has caused Defendant to be unjustly enriched by enjoying the benefit of labor for which it did not pay; and

h.      Whether the Named Plaintiffs and the Class Members are entitled to damages and/or equitable relief including, but not limited to, restitution, disgorgement, and a preliminary and/or permanent injunction and, if so, the proper measure and formulation of such relief.

50.      *Typicality.* The Named Plaintiffs' claims are typical of the claims of the Class. Defendant's refusal and/or failure to pay commissions to the Named Plaintiffs in accordance with the terms of the commission plans applies equally to the Named Plaintiffs and each Class Member. The Class has sustained the same or substantially similar damages as the Named Plaintiffs. Plaintiffs' claims, therefore, are representative of and coextensive with the claims of the proposed class.

51.      *Adequacy.* Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the class they seek to represent. Plaintiffs have retained competent counsel who are experienced in complex and class action litigation, and Plaintiffs intend to prosecute this class action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

52.      *Superiority.* The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual claims against Defendant economically feasible. Individual litigation increases delay and expense to the parties as well as the court. The sheer number of individual claims,

numbering well into the hundreds, significantly impacts the court's docket and requires the expenditure of resources many times the cost of the proposed class. The class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

53.     In the alternative, the Class may be certified because: (a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant; and (b) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## LEGAL CLAIMS

## COUNT I – BREACH OF CONTRACT

54.     Plaintiffs Knoblauch, Schley, and Kucharski repeat the allegations above as if fully set forth herein.

55.     Dick's established a contract with the Named Plaintiffs and all Similarly Situated Employees whereby Dick's agreed to pay a commission to golf salespersons at its Pro+ stores for specified golf equipment sold to Dick's customers in accordance with the PECP in effect at the time the sale was consummated.

56.     The Named Plaintiffs and all Similarly Situated Employees sold golf equipment to Dick's customers that qualified for the payment of commissions in accordance with the PECP in effect at the time the sale was consummated.

57.     Dick's breached its contracts with the Named Plaintiffs and all Similarly Situated Employees by failing and refusing to pay commissions in accordance with the PECP in effect at the time the sale was made.

58.     As a direct and proximate result of Dick's breach of the contracts, the Named Plaintiffs and Similarly Situated Employees have suffered and will continue to suffer economic loss.

## COUNT II – BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING

59.     Plaintiffs Knoblauch, Schley, and Kucharski repeat the allegations above as if fully set forth herein.

60.     Dick's established a contract with the Named Plaintiffs and all Similarly Situated Employees whereby Dick's agreed to pay a commission to golf salespersons at its Pro+ stores for specified golf equipment sold to Dick's customers in accordance with the PECP in effect at the time the sale was consummated.

61.     The contract between Dick's and the Named Plaintiffs and all Similarly Situated Employees implies good faith and fair dealing between the parties as well as a duty of cooperation by the parties.

62.     Dick's has acted in bad faith and dishonesty by failing and refusing to pay commissions to the Named Plaintiffs and Similarly Situated Employees in accordance with the PECP in effect at the time the sale was made.

63.     Dick's has violated the implied covenant of good faith and fair dealing by failing and refusing to pay commissions to the Named Plaintiffs and Similarly Situated Employees in accordance with the PECP in effect at the time the sale was made.

64.     The Named Plaintiffs and all Similarly Situated Employees have performed their duties and obligations on behalf of Dick's in good faith.

65.     The Named Plaintiffs and all Similarly Situated Employees have faithfully and honestly performed their duties and obligations in accordance with the contracts they have with Dick's.

66.     The Named Plaintiffs and all Similarly Situated Employees have suffered and will continue to suffer damages as a result of Dick's breach of the implied covenant of good faith and fair dealing.

## COUNT III – UNJUST ENRICHMENT

67.     Plaintiffs Knoblauch, Schley, and Kucharski repeat the allegations above as if fully set forth herein.

68.     This Count is pled in the alternative to Counts I and II.

69.     The Named Plaintiffs and all Similarly Situated Employees provided beneficial and valuable services to Dick's by engaging customers with their respective golf equipment needs.

70.     The services provided by the Named Plaintiffs and all Similarly Situated Employees contributed to the financial success of Dick's.

71.     The Named Plaintiffs and all Similarly Situated Employees provided services on behalf of Dick's on the expectation that they would be compensated fairly for their services including, but not limited to, in accordance with the PECP in effect at the time sales were made.

72.     Dick's knowingly accepted and appreciated the benefit of the services performed by the Named Plaintiffs and all Similarly Situated Employees.

73.     Dick's has retained and continues to retain millions of dollars in commissions that were obtained through the work of the Named Plaintiffs and all Similarly Situated Employees.

13

74. Despite knowing that commissions are due and payable to the Named Plaintiffs and all Similarly Situated Employees, Dick's has retained the commissions for its own benefit.

75. It would be inequitable for Dick's to retain commissions earned by the Named Plaintiffs and all Similarly Situated Employees under these circumstances without providing compensation to the Named Plaintiffs and all Similarly Situated Employees.

**COUNT IV – WISCONSIN WAGE CLAIM**
**(Brought by Plaintiffs Knoblauch, Schley, and Kucharski**
**on behalf of a Sub-Class of Wisconsin Employees)**

76. Plaintiffs Knoblauch, Schley, and Kucharski repeat the allegations above as if fully set forth herein.

77. Under Wisconsin law, Plaintiffs Knoblauch, Schley, Kucharski, and others employed as golf department salespersons at Defendant's Wisconsin-based Pro+ stores during the time in which Defendant had the PECP are employees of Defendant.

78. Wisconsin employees are entitled to receive as wages "remuneration…for personal services, including salaries, commissions…and any other similar advantages agreed upon between the employer and the employee or provided by the employer as an established policy." Wis. Stat. 109.01(3)

79. As evidenced by the terms of the PECP and Defendant's agreement with its Pro+ employees, Defendant both agreed to and had an established policy for paying commissions to Pro+ golf department salespersons under the terms of the PECP in effect at the time a qualifying sale was made.

80. Defendant violated that agreement and policy when it failed and refused to pay commissions to the Wisconsin Pro+ golf department employees.

81.     Under Wis Stat. 109.03, as a result of Defendant's violation, Dick's is liable to Plaintiffs Knoblauch, Schley, Kucharski and the Wisconsin Sub-Class for the full amount of wages due and owing, a penalty of up to 50% of the wages due and unpaid, and reasonable costs and expenses incurred in bringing this action including, but not limited to, attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, on behalf of themselves and all those similarly situated, request that judgment be entered in their favor and against Defendant Dick's Sporting Goods, Inc. as follows:

A.  An Order certifying this matter as a Class Action pursuant to Fed. R. Civ. P. 23 on behalf of a nationwide class of golf department salespersons at Pro+ stores from the inception of the PECP to the current date, along with a sub-class of employees for Count IV; appointing the Named Plaintiffs as class representatives for the Class and any Sub-Class; and that notice of the pendency of this action be provided to the members of the Class;

B.  An order awarding the Named Plaintiffs and the Class actual damages in an amount to be proven at trial based on Defendant's breach of contract and breach of the covenant of good faith and fair dealing;

C.  An order providing relieve in favor of the Named Plaintiffs and the Class in the amount of benefits received by Defenant and by which Defendant was unjustly enriched;

D.  Providing declaratory relief finding that Defendant is required to pay commissions to the Named Plaintiffs and Class going forward in accordance with the terms of the Parties' agreement and course of dealing, as set forth in the PECP under which the golf department salespersons sold Defendant's products.

E.  An Order awarding all statutory relief requested on behalf of the sub-class in Count IV;

F.  For pre- and post-judgment interest; and

G.  For such other and further relief as the Court deems just and proper under the circumstances.


**JURY TRIAL DEMANDED**

Plaintiffs request a jury trial on all questions of fact raised by this complaint and all causes of action and claims that may be tried to a jury.

Dated this 12th day of March, 2024.

MCDONALD & KLOTH, LLC


By:     s/Shannon D. McDonald
Shannon D. McDonald
SBN: 1036954
N96W18221 County Line Road
Suite 200
Menomonee Falls, WI 53051
Main: 262-252-9122
Fax: 414-395-8773
Email: sdm@themklaw.com

ATTORNEYS FOR PLAINTIFFS