IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

KYLE KNOBLAUCH, JEFF KUCHARSKI, and
GEORGE SCHLEY on behalf of themselves
Individually and all other similarly situated employees,

    Plaintiffs,

v.                                Case No. 24 CV 315

DICK'S SPORTING GOODS, INC.,

    Defendant.

## MOTION TO APPROVE CLASS SETTLEMENT

### INTRODUCTION

Plaintiffs Kyle Knoblauch, Jeff Kucharski, and George Schley ("Plaintiffs") seek preliminary approval of a $160,000 class action settlement of contract and wage and hour claims against Defendant Dick's Sporting Goods, Inc. ("Defendant"). Plaintiffs allege that Defendant instituted a commission pay program, called Premium Equipment Commissions Program ("PCEP") for qualifying golf sales made by persons employed at its Pro+ stores ("Commissioned Salespersons") and that Defendant failed to pay the Commissioned Salespersons commissions in accordance with the PCEP. Plaintiffs alleged that Defendant failed to pay commissions beginning in the first quarter of 2021 and continuing through the present.

Plaintiffs and Defendant engaged in direct negotiations and informal discovery from March 2024 through June 2024. During this time, Defendant reviewed confidential and proprietary data for its Pro+ stores to determine whether and to what extent commissions might

-1-

be owed. Defendant shared a portion of its confidential, proprietary data with Plaintiffs to further discuss and negotiate the breadth and applicability of Plaintiffs' claims against Defendant.

Based upon Defendant's review of its confidential and proprietary data, it was determined that thirteen (13) of Defendant's Pro+ stores may not have paid commissions in strict accordance with the PCEP. Defendant, however, disputes that any additional commissions are owed, and denies any liability. After months of negotiations, Defendant and Plaintiffs agreed to resolve any and all claims related to commission pay flowing to the Commissioned Salespersons arising from these 13 stores. The Settlement Agreement of Class Action Claims (the "Settlement Agreement") is attached hereto as Exhibit 1 to the proposed Order, which has been filed contemporaneously herewith.

The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Federal Rule of Civil Procedure 23 and is fair, adequate, and reasonable. Accordingly, Plaintiffs request that the court grant preliminary approval of the proposed settlement, conditionally certify the proposed class for settlement purposes only, appoint Plaintiffs and Plaintiffs' Counsel as Class Representatives and Class Counsel of the Class, approve the proposed notice plan, and schedule a final fairness hearing.

## FACTUAL BACKGROUND

Defendant is a nationwide retailer of sporting goods and has over 800 stores and 50,000 employees across 48 states. A small percentage of those retail stores have a more sophisticated golf department and are designated as "Pro+" stores. The Pro+ stores carry a larger selection of golf equipment, and their golf sales associates are specially trained and qualified to sell golf equipment. Depending on the size of the Pro+ store, anywhere from 2-6 employees may be employed as a salesperson within the Pro+ golf department.

In the first quarter of 2021, Defendant began providing its employees in certain Pro+ stores with an opportunity to earn commissions for selling specific, pre-determined golf products. In 2023, Defendant expanded its commission program to include employees that custom fit or directly assist in the selection and sale of a commission product. The Commissioned Salespersons were eligible to receive a commission of up to 3% on the sale of commissionable products, but the amount of potential commission varied by manufacturer and product. Commissioned Salespersons were also required to follow a specific protocol to submit and qualify to earn commissions on the sale of qualifying products.

Plaintiffs were and are employed with Defendant as salespersons at one of its Pro+ stores. Plaintiffs alleged that they were not informed of Defendant's PCEP upon being hired or anytime thereafter. Plaintiffs later learned of the PCEP and brought it to Defendant's attention. Pls contend that Defendant acknowledged the PCEP but did not pay Plaintiffs any commissions under the PCEP. Defendant denied that any commission could be owed under a commission plan that had alleged not been communicated to Plaintiffs. Plaintiffs filed the instant suit seeking to recover unpaid commissions on their own behalf as well as on behalf of all those similarly situated.

## **PROCEDURAL BACKGROUND**

Plaintiffs filed their Complaint on March 12, 2024 in the U.S. District Court for the Eastern District of Wisconsin seeking unpaid commissions on behalf of all salespersons employed at Defendant's Pro+ stores who were entitled to receive commissions for commissionable products sold between the first quarter of 2021 and the present. (Dkt. 1). On August 9, 2024, Plaintiffs' Counsel notified the Court that the parties had reached an agreement in principal to settle all issues raised in the Complaint. (Dkt. 6). On October 11, 2024, the Parties

filed a Joint Notice of Status of Settlement requesting sixty (60) days for Plaintiffs to draft and file their Motion to Approve the Class Settlement. (Dkt. 7). The Court granted the parties' joint request and Ordered Plaintiffs to file their Motion to Approve Class Settlement on or before December 15, 2024. (Text Only Order, October 11, 2024).

## PROPOSED SETTLEMENT TERMS

A summary of the proposed settlement terms is as follows:

1. Settlement Amount. Defendant will pay a maximum of $160,000 ("Common Fund") inclusive of attorney's fees (up to $53,333.33), costs (as itemized by Plaintiffs' Counsel in the Declaration of Shannon D. McDonald, being filed herewith), enhancement payments for the class representatives (up to $5,000 each), taxes, and settlement administration costs (up to $24,000).

2. Distribution of Settlement Shares. Settlement shares will be made on a *claims made* basis in accordance with each member's submitted share form. (Settlement Agreement at III.C.4.). Regardless of the number of claims made or the total amount claimed, at least 75% of the Payout Fund will be distributed to the claimants as a "floor." (Id.). In the event that less than 75% of the Payout Fund is claimed, the amounts allocated to those Class Members who submitted claim forms will be increased *pro-rata* up to the 75% floor. (Id.).

3. Class Definitions, Relevant Stores, and Class Period. There is one defined Class. The Class is defined as:

> "All of Defendant's employees employed at a Relevant Store who were eligible to receive a commission under Defendant's Premium Equipment Commissions Program ("PCEP") during the Class Period."

"Relevant Stores" means Defendant's Stores Nos. 15, 22, 70, 77, 196, 304, 309, 399, 626, 634, 706, 711, and 1027.

"Class Period" means January 1, 2021 through the date of Preliminary Approval.

4. Claims Process. Class Members who wish to receive any portion of the Class Payout Fund must submit a timely and valid Share Form. (Settlement Agreement at III.H.6.). Class Members will have 30 days to complete and return the share form. (Id.).

5. Opt-Out. Class Members will have 30 days to opt out of, or object to, the settlement, as specified in the Class Notice. (Settlement Agreement at III.H.3.b.). Any Class Member who opts-out of the Settlement Class will not be entitled to any recovery under the settlement and will not be bound by the settlement as it relates to the Class Settlement. (III.H.4.b.). Any class settlement funds owed to any individual in the Settlement Class who opts out of the Settlement Class will revert to Defendant, subject to the terms in Paragraph 2, above. If the total number of opt-outs is more than two percent of the Settlement Class, Defendant shall have, in its sole discretion, the option to void this Settlement.

6. Objections. Any Class Member who has timely objected to the settlement may be heard at the Final Approval hearing so long as that Class Member also has given written notice of their intention to appear at the Final Approval hearing and submitted their written objection to the Settlement Administrator on or before the Objection Deadline. (Settlement Agreement at III.H.4.a.). Any Class Member who fails to file and serve timely written objections shall remain a Settlement Class Member and shall be deemed to have waived any objections and shall be foreclosed from making any objection to the settlement. (Id.).

7. Administration. The settlement will be administered by CPT Group.

8. Attorney's Fees and Costs. Plaintiff's Counsel will seek preliminary approval of attorney's fees of 33% of the Common Fund ($53,333.33). (Settlement Agreement at III.C.2.). Additionally, Plaintiff's Counsel will seek reimbursement for up to $444.50 in actually incurred out-of-pocket litigation costs. (Id.; Declaration of Shannon D. McDonald).

9. Scope of Release and Final Judgment. The release contemplated by the proposed settlement corresponds to the claims alleged in the Complaint, or arising from or based on the facts alleged in the Complaint. (Settlement Agreement at III.F.1). The release for the Named Plaintiffs is a general release and covers all claims, known or unknown, arising out of Plaintiffs' employment with Defendant. (Settlement Agreement at III.F.2).

## ARGUMENT

### I. The Court Should Preliminarily Approve This Class Action Settlement Under Rule 23(e) of the Federal Rules of Civil Procedure.

A class action may not be dismissed, compromised, or settled without approval of the Court. *See* Fed. R. Civ. P. 23(e). Rule 23 requires class action settlements to satisfy two prerequisites before the court may grant certification for purposes of preliminary approval: (1) the settlement class must meet the requirements for class certification if it has not yet been certified; and (2) the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(a), (b), and (e).

#### A. The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a) for Conditional Certification.

Rule 23(a) requires the Plaintiffs to establish (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation for a class to be certified. *See* Fed. R. Civ. P.

23(a)(1)-(4). Rule 23 also provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have established all of these requirements.

1. **The Class is Sufficiently Numerous.**

Defendant currently employs several hundred employees across the 13 Pro+ stores at issue in this case. Each Pro+ store employee can potentially earn a commission under the PCEP. Class members, therefore, are far too numerous to be individually joined in this lawsuit. The number of class members clearly satisfies the numerosity requirement of Rule 26(a)(1).

2. **Commonality is Satisfied.**

Rule 23(a)(2) commonality is satisfied where "claims depend on a common contention that is capable of class-wide resolution" and the determination of the truth or falsity of that contention will "resolve an issue that is central to the validity of each claim." *Chi. Teachers Union, Local No. 1 v. Bd of Educ. of Chi.*, 797 F 3d 425, 434 (7th Cir. 2015), citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011).

Common questions of law and/or fact exist as to the members of the Class, and commons questions of law and/or fact predominate over any questions affecting only individual members of the Class. The common questions include the following:

> a. Whether members of the Nationwide Class had contractual relationships with Defendant such that Class Members were required to perform their duties and responsibilities as employees of Defendant in exchange for the PCEP that provided for commissions to be paid to the employees who made sales that were eligible for commission payments per the PCEP;

b. Whether Defendant agreed to pay the Class Members for products sold in accordance with the terms of the PCEP that was in effect between January 1, 2021 and the present date;

c. Whether Defendant breached its agreements with the Class Members by failing and/or refusing to pay commissions earned in accordance with the terms of the PCEP in effect at the time of sale;

d. Whether Defendant breached the covenant of good faith and fair dealing by failing and/or refusing to pay commissions earned in accordance with the terms of the PCEP in effect at the time of sale;

e. Whether Defendant breached the covenant of good faith and fair dealing by refusing to notify Pro+ stores of the existence of the PCEP;

f. Whether Defendant breached the covenant of good faith and fair dealing by refusing to pay commissions to the Class Members after being notified of its failure to pay commissions in accordance with the terms of the PCEP;

g. Whether Defendant's decision to retain for itself commissions earned by Class Members has caused Defendant to be unjustly enriched by enjoying the benefit of labor for which it did not pay; and

h. Whether the Named Plaintiffs and the Class Members are entitled to damages and/or equitable relief including, but not limited to, restitution, disgorgement, and a preliminary and/or permanent injunction and, if so, the proper measure and formulation of such relief.

Defendant's PCEP applied equally to each and every one of Defendant's employees as does the question of whether Defendant applied its commission plan equally and correctly across its Pro+ stores in accordance with the common law and applicable statutes in which each Pro+ store is located. These common questions of law and fact satisfy the commonality requirement of Rule 23(a)(2).

### 3. Plaintiffs' Claims are Typical of Those in the Putative Class.

The Named Plaintiffs' claims are typical of the claims of the Class. Defendant's refusal and/or failure to pay commissions to the Named Plaintiffs in accordance with the terms of the PCEP applies equally to the Named Plaintiffs and each Class Member. The Class has sustained

the same or substantially similar damages as the Named Plaintiffs. Plaintiffs' claims, therefore, are representative of and coextensive with the claims of the proposed class. Plaintiffs, therefore, have established the typicality element required of Rule 23(a)(3). Rule 23(a)(3) is satisfied where, as here, there is a similarity of legal theory and the representative plaintiffs and class members claim that they were injured by the same policy. *Muro v.Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

### 4. Plaintiff and Counsel will Fairly Represent the Class.

Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the class they seek to represent. (McDonald Dec. at ¶ ). Plaintiffs' claims do not conflict with the claims of other class members, as all class members seek the same relief and class representatives' proof would not damage or diminish other class members' ability to recover. *See Abbott v. Lockheed Martin Corp.,* 725 F.3d 803, 813 (7th Cir. 2013). Plaintiffs have retained competent counsel who are experienced in complex and class action litigation, and Plaintiffs intend to prosecute this class action vigorously. (Id.). Plaintiffs' Counsel has no conflict with the interests of the members of the class and has substantial experience litigating wage and hour actions in state and federal courts in Wisconsin and Illinois. (Id.). Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

### B. The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(b) for Conditional Certification.

Rule 23 requires Plaintiffs to demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy." *See* Rule 23(b)(3).

The common questions raised in this action predominate over any individualized questions concerning the class. Here, the common questions of whether Defendant equally and appropriately applied the PCEP to all eligible employees predominate over any other issue an individual member may otherwise have. Resolution of this dispute requires a rather straightforward application of a mathematical equation to determine the amount of pay each Class Member will receive. Individualized facts or issues will not come into play in this computation.

Furthermore, this class action is a superior method of adjudication compared to a multitude of individual suits. Rule 23 sets forth four (4) elements for a court to consider in this regard:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, a class action is much more preferable because Class Members do not have a strong interest in pursuing their own individual claims as each person's prosecution of his or her claim would be identical to and duplicative of the class action litigation. The class action mechanism would efficiently and effectively resolve numerous identical claims while avoiding unnecessary waste of judicial resources. A class action also would eliminate the possibility of conflicting

decisions from repetitious litigation in various forums. Lastly, there are no manageability issues presented by the resolution of the Class's identical claims. Accordingly, a class action is the superior method for adjudicating the claims in this action.

**C. The Settlement is Fair, Reasonable, and Adequate.**

Rule 23 sets forth several factors to consider when determining whether a class settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Those facts include whether:

> A. the class representatives and class counsel have adequately represented the class;
>
> B. the proposal was negotiated at arm's length;
>
> C. the relief provided for the class is adequate, taking into account:
>
>   i. the costs, risks, and delay of trial and appeal;
>
>   ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>
>   iii. the terms of any proposed award of attorney's fees, including timing of payment; and
>
>   iv. any agreement required to be identified under Rule 23(e)(3); and
>
> D. the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

**1. The Plaintiffs and Class Counsel Have Adequately Represented the Class.**

Plaintiffs have consistently represented the Class throughout this litigation. Plaintiffs have provided substantial details and documents in support of the class claims and routinely made themselves available to assist counsel in their efforts to prosecute this action. Plaintiffs' support for and dedication to this litigation has not waivered. Each of the Named Plaintiffs

satisfies the definition of a Commissioned Salesperson and was and is allegedly entitled to compensation under the PCEP. Plaintiffs' entitlement to commission under the plan is no different than any other Class Member's entitlement under the same plan.

Class counsel are well-qualified and experienced in class action and complex federal statutory litigation and have experience with the kind of claims involved in this case. The adequacy of class counsel has not been challenged.

### 2. The Proposed Settlement is the Result of Good Faith, Informed, Arm's Length Negotiations.

As described above, settlement discussions in this case began shortly after the Complaint was filed, primarily owing to Defendant's argument that the PCEP had not been implemented within some of its Pro+ stores, thus no commissions were owed. Defendant conducted an internal analysis of its confidential, proprietary records and determined that thirteen (13) Pro+ stores may not have implemented the PCEP. Defendant shared this information with Plaintiffs. Defendant conducted an analysis of each of the 13 stores in which the PCEP may not have been implemented and determined the maximum amount of commissions that could have been paid to employees under the plan if it had been implemented and if all employees complied with all terms for every commissionable sale. Defendant shared this data with Plaintiffs and negotiations ensured. Defendant's offer to settle the class action accounts for commission payments, costs, and fees. Accordingly, the proposed settlement was the result of a good faith, informed, arm's length negotiation.

### 3. The Proposed Settlement Provides More Than Adequate Relief to the Class.

As described above, the proposed settlement includes 13 Pro+ stores. The settlement amount was determined after conducting an analysis of each of these 13 stores, determining the maximum amount of commissions that could have been paid under the PCEP for each store, and

negotiating a resolution to the claims based upon the total amount of commissions that could have been paid under the plan. Plaintiffs, therefore, are receiving nearly all of the compensation to which they might have been entitled under the plan.

The costs, risks, and delay of trial and appeal certainly factor in favor of the proposed settlement. Plaintiffs and Plaintiffs' Counsel were able to secure the proposed settlement prior to extensive litigation and put the putative class in a position to receive a favorable resolution without having to endure the time and expense of protracted litigation.

The proposed settlement accounts for compensating the Class Members on a workweek basis, depending on their job title, thereby equalizing the commission payments that should have been made under the plan. Had the plan been implemented, and had every employee fully complied with the PCEP for every single sale, the Plaintiffs understand that Defendant would have known the exact amount of commissions due each Commissioned Salesperson. Since that did not occur, neither the Defendant nor any other person or entity is able to state with certainty the exact amount of commissions the each Commissioned Salesperson might have earned. The proposed settlement resolves this issue of unknowability. Each of the Class Members will be compensated equitably based on their job title and workweeks.

The proposed settlement also accounts for attorney's fees in a reasonable manner. Attorney's fees shall not exceed 33% of the total gross value of the settlement amount regardless of the amount of time Plaintiffs' Counsel will dedicate to prosecuting this action. Plaintiffs' Counsel will be paid by the Settlement Administrator within 21 days of Defendant funding the Settlement Administrator, which occurs *after* the Settlement Administrator has issued an accounting of all anticipated payments including the Class Member Payments, Named Plaintiffs' Enhanced Payments, Fee Award and Costs Award to Plaintiffs' Counsel, and Settlement

Administration Expenses. (Settlement Agreement at III.B.2, 3; III.C.1, 2.).

The proposed settlement is memorialized in a comprehensive Settlement Agreement. (Exhibit 1). The Settlement Agreement sets forth in detail all actions to be taken by the parties and/or vendors of the parties as well as the schedule for these actions to be taken. (Id.).

### 4. The Proposed Settlement Treats Class Members Equitably.

All Class Members are treated equitably under the Settlement Agreement as they receive compensation on a workweek basis and in accordance with their position as a "Golf Lead," "Golf Associate," or "other Class Member." (Settlement Agreement at p.11). The distinction between these positions is important because Golf Leads are more likely than Golf Associates, and Golf Associates are more likely than other Class Members, to make sales which arguably would have been included under the PCEP. (Id. at p. 12). Golf Leads will receive ten Settlement Workweeks for every workweek they were employed during the Class Period; Golf Associates will receive five Settlement Workweeks for every workweek they were employed during the Class Period; and all other Class Members will receive one Settlement Workweek for every workweek they were employed during the Class Period. (Id. at pp. 11-12).

As explained above, each putative class member would not be able to establish the exact amount of commissions to which he/she would be entitled because the commission plan was not implemented and, thus, Defendant was not tracking each Commissioned Salesperson's sales during the relevant period. Since each sale was not tracked, there is no way to determine the exact amount of commission each Commissioned Salesperson is owed. The proposed settlement addresses this issue by compensating each Class Member based upon the number of workweeks worked during the relevant period and the position he/she held. This process creates equity amongst the Class Members.

### 5. The Proposed Settlement Also Meets the Seventh Circuit's Fairness Factors.

In addition to these factors, the Seventh Circuit has identified several guidelines to be considered when determining whether a settlement is fair, reasonable, and adequate: (1) the strength of the plaintiffs' case compared to the amount of the defendants' settlement offer; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotation marks and citation omitted); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (7th Cir. 2014).

Each factor is met here. Defendant contends that the PCEP did not apply to employees who were not aware of the program as there could be no contract formation when there was no meeting of the minds since the PCEP was not communicated to certain employees. Thus, Defendant therefore did not owe any commissions at all. Continued litigation would also be time consuming and costly, as each golf sale from 2021 to the present would need to be individually reviewed and calculated to determine whether a commission applied under the PCEP. Both Plaintiffs' and defense counsel are competent, and agree that settlement is the more practical approach. Last, the settlement is reflective of the relative straightforward, informal, discovery process here.

**D.      The Proposed Notice Program Complies with Rule 23 and Due Process.**

Rule 23(c) requires the Court to direct the "best notice that is practicable under the circumstances" to the Rule 23(b)(3) Settlement Class. The Notice Program includes direct notice to the Settlement Class members by First Class Mail that contains the information specified in Rule 23(c)(2)(B). (Settlement Agreement at III.H.3.b. and c.). The proposed Notice

-15-

Case 2:24-cv-00315-JPS    Filed 12/15/24    Page 15 of 16    Document 10

Program satisfies each of the requirements of Rule 23(c) and should be approved.

## CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request the Court to grant Plaintiffs' Motion to Approve Class Settlement and set a Final Approval Hearing.

Respectfully submitted this 15th day of December, 2024.

                                              **MCDONALD & KLOTH, LLC**
                                              Attorneys for Plaintiffs

                             By: s/Shannon D. McDonald
                                              Shannon D. McDonald
                                              WI State Bar No. 1036954
                                              N96W18221 County Line Rd. #200
                                              Menomonee Falls, WI 53051
                                              Direct: (262) 252-9123
                                              Office: (262) 252-9122
                                              Fax:    (414) 395-8773
                                              sdm@themklaw.com